IN THE UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **BRANDON SMITH**, *on behalf of* | ) | |
| *himself and all others similarly* | ) | Case No. 3:23-cv-953 |
| *situated,* | ) | |
| | ) | Judge |
| Named Plaintiff, | ) | |
| v. | ) | Magistrate Judge |
| | ) | |
| **OHIO STEEL PROCESSING, LLC,** | ) | **JURY DEMAND** |
| **D/B/A OHIO PICKLING &** | ) | **ENDORSED HEREON** |
| **PROCESSING** | ) | |
| c/o Statutory Agent | ) | |
| Ohio Statutory Agent, LLC | ) | |
| 6545 Market Avenue N., Suite 100 | ) | |
| North Canton, Ohio 44721, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S COLLECTIVE AND CLASS ACTION COMPLAINT

Now comes Named Plaintiff Brandon Smith ("Smith" or "Named Plaintiff"), by and through undersigned counsel, *individually and on behalf of all others similarly situated*, for his Collective and Class Action Complaint against Defendant Ohio Steel Processing, LLC d/b/a Ohio Pickling & Processing ("OSP" or "Defendant") for Defendant's willful failure to pay Named Plaintiff and other similarly situated employees overtime wages as well as failure to comply with all other requirements of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.03 ("the Ohio Wage Act" or "OWMA"), and the Ohio Prompt Pay Act ("OPPA"), O.R.C. § 4113.15 (the Ohio Wage Act and the OPPA will be referred to collectively as "the Ohio Acts"), and states and alleges as follows:

### SUMMARY OF COMPLAINT

1.      Smith brings this collective and class action Complaint to recover unpaid wages and other damages from Defendant.

2.     Smith worked for Defendant as a maintenance technician at Defendant's primary metal processing facility located at 1149 Campbell St., Toledo, Ohio 43607 from approximately December, 2021 until March 22, 2023.

3.     Like the Putative Class Members (as defined below), Smith regularly worked more than forty (40) hours in a workweek, but Defendant does not pay him and the Putative Class Members for all the hours they work in at least three (3) ways described below.

4.     First, Defendant automatically deducts (or simply does not pay for) thirty (30) minutes per day from these employees' work time for so-called meal breaks (hereinafter "Unpaid Meal Break Policy").

5.     Smith and the Putative Class Members are thus not paid for that time.

6.     However, Defendant failed to provide Smith and the Putative Class Members with *bona fide* meal breaks.

7.     Instead, Defendant requires Smith and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions with job duties during their unpaid "meal breaks."

8.     Defendant's Unpaid Meal Break Policy violates the FLSA and the Ohio Acts by depriving Smith and the Putative Class Members of wages, including overtime pay, for all hours worked, including those worked in excess of 40 hours in a workweek.

9.     Second, Defendant paid the Putative Class Members an hourly wage for hours worked (hereinafter "Base Hourly Wage"). In addition to the Base Hourly Wage, Defendant pays Smith and the Putative Class Members with one or more additional forms of nondiscretionary remuneration (collectively hereinafter "Additional Remuneration") that should have been included in the calculation of employees' regular rates of pay for overtime compensation calculation

purposes, including but not limited to production bonuses for Defendant's employees meeting certain production goals, shift premiums for working certain shifts, and other bonuses or forms of compensation which were based on objective, predetermined, and measurable criteria, induced workers to work more efficiently or productively or at undesirable hours, incentivized or encouraged Named Plaintiff and Putative Class Members to work more steadily, rapidly and/or efficiently, and/or incentivized or encouraged its workers to remain with the company given its importance to the overall operation of Defendant's business. *See* 29 C.F.R §§ 778.207(b), 778.211(c). *See also* U.S. Department of Labor Fact Sheet # 56C: Bonuses under the Fair Labor Standards Act (FLSA).[1]

10.     However, Defendant failed to include the Additional Remuneration in calculating Smith's and the Putative Class Members' regular rates of pay for overtime purposes during workweeks when Smith and the Putative Class Members worked overtime in one or more workweeks ("Additional Remuneration Policy").

11.     Defendant's Additional Remuneration Policy violates the FLSA and Ohio Acts by failing to pay Smith and the Putative Class Members overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* remuneration received – for all overtime hours worked.

12.     Finally, Defendant has a policy whereby it rounds Smith's and the Putative Class Members' compensable hours by quarter-hour increments.

13.     However, upon information and belief, Defendant failed to pay Smith and the Putative Class Members for all hours worked, including overtime, because the rounding policy is non-neutral and rounds to the Putative Class Members' detriment ("Rounding Policy") resulting

---

[1] https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses (last accessed May 9, 2023).

in unpaid compensation even though Smith and the Putative Class Members perform integral and indispensable job duties before and after their scheduled start/end times.

14.     As a result, Defendant's Rounding Policy violates the FLSA and the Ohio Acts by failing to pay Smith and the Putative Class Members all overtime wages.

15.     Defendant operates at least one metal processing facility doing business as "Ohio Picking & Processing" located at 1149 Campbell St., Toledo, Ohio 43607.

16.     At its facility, Defendant primarily offers services related to metal processing, including pickling, slitting, leveling, transportation, inspection and testing, among other processing services depending on customer needs.

17.     At its facility, Defendant employs hundreds of hourly, non-exempt employees performing various production and maintenance job duties related to metal processing.

18.     At this facility, Defendant applies the same policies, procedures, and practices with respect to the payment of overtime wages to its hourly, non-exempt employees as alleged in this Complaint.

19.     As more fully alleged below, Defendant repeatedly and willfully violated the FLSA and the Ohio Acts by failing to pay its hourly workers, including Named Plaintiff and the Putative Class Members for all compensable hours.

20.     Named Plaintiff brings this action on behalf of himself and similarly situated current and former hourly production/maintenance employees who elect to opt in pursuant to the FLSA, 29 U.S.C. § 216(b), to remedy violations of the FLSA wage and hour provisions by Defendant (the "FLSA Collective" as defined below).

21.     Named Plaintiff also brings this action on behalf of himself and similarly situated current and former hourly production/maintenance employees pursuant to Federal Rule of Civil

Procedure 23, to remedy violations of the Ohio Acts claims (the "Ohio Class" or "Ohio Class Members" as defined below).

## I.  JURISDICTION AND VENUE

22.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. *See* 29 U.S.C. § 216(b).

23.    This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. *See* 29 U.S.C. § 1367.

24.    This Court has personal jurisdiction over Defendant because it is a corporation formed under the laws of the State of Ohio.

25.    Venue is proper in this Court because Smith worked at Defendant's primary facility located at 1149 Campbell Street, Toledo, Ohio 43607, which is in this District and Division. *See* 28 U.S.C. § 1391(b).

## II.  THE PARTIES

### A.  Named Plaintiff Smith

26.    Smith worked for Defendant as a maintenance technician at Defendant's primary metal processing facility located at 1149 Campbell St., Toledo, Ohio 43607 from approximately December, 2021 until March 22, 2023.

27.    Throughout his employment, Defendant classified him as non-exempt and paid him on an hourly basis.

28.    Defendant pays its hourly, non-exempt employees, including Named Plaintiff and the Putative Class Members, on a weekly basis whereby the workweek begins on a Saturday and ends on a Sunday.

29.     As a maintenance technician, Smith primarily performed non-exempt job duties such as general maintenance of Defendant's machinery and equipment throughout the facility.

30.     Throughout his employment, Defendant subjected Smith to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

31.     However, Smith did not receive *bona fide* meal breaks.

32.     Throughout his employment, Defendant also paid Smith Additional Remuneration as summarized above.

33.     However, Defendant failed to include Additional Remuneration in calculating Smith's regular rate of pay for overtime purposes.

34.     Finally, Defendant also required Named Plaintiff and the Putative Class Members to clock in/out each day using the same company-wide timekeeping system.

35.     Despite recording the exact time that Named Plaintiff and the Putative Class Members clocked in/out each day, Defendant rounds its employees' time in quarter-hour increments.

36.     However, Named Plaintiff and the Putative Class Members performed integral and indispensable work, as described below, before and after their scheduled shifts, but they were not paid for such time due to Defendant's Rounding Policy.

37.     Smith's Consent to Join Form is filed herewith, pursuant to 29 U.S.C. § 216(b), and attached as **Exhibit A**.

38.     Smith brings this action on behalf of himself and other similarly situated hourly, non-exempt employees who (1) were subject to Defendant's Unpaid Meal Break Policy; (2) were paid under Defendant's Additional Remuneration Policy; and/or (3) were subject to Defendant's Rounding Policy.

39. The FLSA Collective of similarly situated employees to whom Smith seeks to represent are defined as:

> All hourly, non-exempt production/maintenance employees who were subject to the Unpaid Meal Break Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Meal Break Collective Members" or "FLSA Meal Break Collective");
>
> All hourly, non-exempt production/maintenance employees who were subject to the Additional Remuneration Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Additional Remuneration Collective Members" or "FLSA Additional Remuneration Collective"); and
>
> All hourly, non-exempt production/maintenance employees who were subject to the Rounding Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Rounding Collective Members" or "FLSA Rounding Collective")

40. The FLSA Collective comprised of the FLSA Meal Break Collective Members, FLSA Additional Remuneration Collective Members, and FLSA Rounding Collective Members are collectively referred to as the "FLSA Collective," "FLSA Collective Members" or "FLSA Collectives."

41. Smith also seeks to represent an Ohio Class comprised of classes under the Ohio Acts – OMWA and the OPPA – pursuant to Fed. R. Civ. P. 23.

42. The Ohio Classes of similarly situated employees are defined as:

> All hourly, non-exempt production/maintenance employees who were subject to the Unpaid Meal Break Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Meal Break Class Members" or "Ohio Meal Break Class");
>
> All hourly, non-exempt production/maintenance employees who were subject to the Additional Remuneration Policy at any time during the past two (2) years and continuing through final

disposition of this case ("Ohio Additional Remuneration Class Members" or "Ohio Additional Remuneration Class"); and

All hourly, non-exempt production/maintenance employees who were subject to the Rounding Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Rounding Class Members" or "Ohio Rounding Class").

43.     The Ohio Meal Break Class Members, Ohio Additional Remuneration Class Members, and Ohio Rounding Class Members are collectively referred to as the "Ohio Class," "Ohio Class Members" or "Ohio Classes."

44.     The FLSA Collective Members and the Ohio Class Members are collectively referred to as the "Putative Class Members," "Putative Class," or the "Putative Classes."

**B. Defendant**

45.     Defendant is an Ohio limited liability company and may be served with process by serving its registered agent:  Ohio Statutory Agent, LLC, 6545 Market Avenue N., Suite 100, North Canton, Ohio 44721.

46.     Defendant operates at least one metal processing facility doing business as "Ohio Picking & Processing" located at 1149 Campbell St., Toledo, Ohio 43607.

47.     At its facility, Defendant primarily offers services related to metal processing, including pickling, slitting, leveling, transportation, inspection and testing, among other processing services depending on customer needs.

48.     At its facility, Defendant employs hundreds of hourly, non-exempt employees performing various production and maintenance job duties related to metal processing.

49.     At this facility, Defendant applies the same policies, procedures, and practices with respect to the payment of overtime wages to its hourly, non-exempt employees as alleged in this Complaint.

50.     At all times relevant, Defendant was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

51.     At all times relevant, Defendant was an enterprise within the meaning of 29 U.S.C. § 203(r). That is, Defendant performs related activities through unified operations and common control for a common business purpose.

52.     At all times relevant, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because Defendant has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, such as personal protective equipment, tools, and cell phones.

53.     At all relevant times, Defendant has had an annual gross volume of sales made, or business done, of not less than $500,000 each of the last three (3) years preceding the original Complaint.

54.     As alleged above, Defendant applied its Unpaid Meal Break Policy, Additional Remuneration Policy, and/or its Rounding Policy uniformly to its hourly production/maintenance employees.

**III.     FACTUAL ALLEGATIONS**

55.     At all times relevant, Named Plaintiff Smith and other members of the Putative Class were hourly, non-exempt employees entitled to overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207; Ohio Revised Code § 4111.03.

56.     At all times relevant, Named Plaintiff and other members of the FLSA Collective and Ohio Class were hourly, non-exempt production/maintenance employees entitled to overtime compensation at the rate of one and one-half times their regular rate of pay for the hours they worked in excess of forty (40) each workweek. 29 U.S.C. § 207; O.R.C. § 4111.03.

57.     During the three (3) years preceding the original Complaint, (1) Named Plaintiff and similarly situated production/maintenance employees regularly worked overtime in one or more workweeks without compensation as more fully outlined below, and (2) Defendant knew or should have known that Named Plaintiff and similarly situated production/maintenance employees worked overtime without proper compensation.

**(Unpaid Overtime Due to Defendant's Unpaid Meal Break Policy)**

58.     Defendant required a meal break deduction of at least thirty (30) minutes per day from Named Plaintiff's and similarly situated production/maintenance employees' compensable hours worked. However, Named Plaintiff and similarly situated production/maintenance employees were often unable to take a bona fide meal break, took a shortened meal break, and/or otherwise was unable to take a fully uninterrupted meal break because of their substantive job duties.

59.     Defendant had actual or constructive knowledge that Named Plaintiff's and similarly situated production/maintenance employees' meal breaks were either missed, shortened, and/or otherwise interrupted by job duties.

60.     Named Plaintiff and similarly situated patient care employees were not permitted to report the missed/interrupted meal breaks.

61. In fact, despite complaining to management about the interrupted/missed meal breaks, Named Plaintiff and similarly situated production/maintenance employees were discouraged from reporting instances of interrupted/missed meal breaks.

62. In other instances, Defendant instructed Named Plaintiff and other members of the Putative Class to "use it or lose it" regardless of the fact that Named Plaintiff and the Putative Class worked through their meal breaks.

63. As a result of Defendant's policy and/or practice to require a 30-minute meal break deduction from Named Plaintiff's and similarly situated production/maintenance employees' compensable hours worked for meal breaks that were not taken at all or that were interrupted by work duties, Defendant had actual or constructive knowledge that they were not compensating Named Plaintiff and similarly situated patient care employees for all hours worked.

**(Unpaid Overtime Due to Failure to Pay at Correct Regular Rate of Pay)**

64. During their employment with Defendant, Named Plaintiff and the Putative Class Members were not fully and properly paid for all of their compensable overtime hours worked because Defendant did not properly calculate their regular rates of pay for the purposes of meeting the minimum requirements set forth in the FLSA and the Ohio Acts, which resulted in unpaid overtime wages. Defendant did not properly calculate overtime based on Named Plaintiff's and other members of the Putative Class Members' ***regular rate of pay***, as defined by the FLSA and as required by the Ohio Acts, but instead calculated overtime compensation based on Named Plaintiff's and other members of the Putative Class's hourly rates of pay, resulting in unpaid overtime compensation.

65. As outlined above, Defendant paid Named Plaintiff and the Putative Class Members a Base Hourly Wage as well as one or more additional forms of nondiscretionary

remuneration that should have been included in the calculation of employees' regular rates of pay for overtime compensation calculation purposes, including but not limited to, production bonuses for Defendant's employees meeting certain production goals, shift premiums for working certain shifts, and other bonuses or forms of compensation which were based on objective, predetermined, and measurable criteria, induced workers to work more efficiently or productively or at undesirable hours, incentivized or encouraged Named Plaintiff and similarly situated workers to work more steadily, rapidly and/or efficiently, and/or incentivized or encouraged its workers to remain with the company given its importance to the overall operation of Defendant's business. *See* 29 C.F.R §§ 778.207(b), 778.211(c). *See also* U.S. Department of Labor Fact Sheet # 56C: Bonuses under the Fair Labor Standards Act (FLSA).[2]

66.     Defendant informed Named Plaintiff and other members of the Putative Class of the additional non-discretionary Additional Remuneration, upon hiring or otherwise during their employments. Named Plaintiff and other members of the Putative Class expected to receive the Additional Remuneration and did in fact receive the Additional Remuneration.

67.     During the last three years preceding the filing of this Complaint, Named Plaintiff and other members of the Putative Class received or earned their Base Hourly Wage in addition to the Additional Remuneration as described above in one or more workweeks when they work overtime hours, more than forty (40) hours in a single workweek.

68.     By way of one non-exhaustive example within the preceding three (3) years, during the pay period of February 26, 2023 to March 4, 2023, Named Plaintiff Smith worked at least 40 regular hours and at least 9.50 hours of overtime.

---

[2] https://www.dol.gov/agencies/whd/fact-sheets/56c-bonuses (last accessed May 9, 2023).

69.     For the corresponding pay period, Smith was paid a gross amount of $1,521.51 on March 9, 2023 as follows: 40 regular hours at a rate of $27.59 per hour, 9.50 hours of overtime at a rate of $41.39 per hour, and Smith also earned Additional Remuneration in the amount of $24.75.

70.     However, Defendant failed to include the Additional Remuneration of $24.75 into his regular rate of pay for purposes of calculating his overtime.

71.     Dividing his overtime premium of $393.16 by his overtime hours of 9.50 hours yields approximately $41.39, which demonstrates that Defendant paid Named Plaintiff at a rate of $27.59 per hour, the overtime premium is only one-and-one-half times his Base Hourly Wage, and it excludes Additional Remuneration.

72.     As such, Named Plaintiff's overtime rate of $41.39 is based solely on his Base Hourly Wage of $27.59 per hour and did not include his Additional Remuneration as required by the FLSA and Ohio law.

73.     As a result, Defendant failed to pay Named Plaintiff at the correct regular rate of pay.

74.     If Defendant had properly included Named Plaintiff's Additional Remuneration in its regular rate of pay calculations as required by the FLSA and Ohio law, Named Plaintiff Smith's overtime rate of pay would necessarily have been higher due to the $24.75 in Additional Remuneration.

75.     By way of another non-exhaustive example from 2022, during the pay period of May 22, 2022 to May 28, 2022, Named Plaintiff Smith worked at least 40 regular hours and at least 7.00 hours of overtime.

76.     For the corresponding pay period, Smith was paid a gross amount of $1,456.25 on June 2, 2022 as follows: 40 regular hours at a rate of $22 per hour, 7.00 hours of overtime at a rate

of $33 per hour, and Smith also earned Additional Remuneration in the amounts of $20 and $5.25 for working certain shifts and $300 due to a production bonus.

77.     However, Defendant failed to include the Additional Remuneration of $20, $5.25, and $300 into his regular rate of pay for purposes of calculating his overtime.

78.     Dividing his overtime premium of $231 by his overtime hours of 7.00 hours yields $33, which demonstrates that Defendant paid Named Plaintiff at a rate of $22 per hour, the overtime premium is only one-and-one-half times his Base Hourly Wage, and it excludes Additional Remuneration.

79.     As such, Named Plaintiff's overtime rate of $33 is based solely on his Base Hourly Wage $22 per hour and did not include his Additional Remuneration as required by the FLSA and Ohio law.

80.     As a result, Defendant failed to pay Named Plaintiff at the correct regular rate of pay.

81.     If Defendant had properly included Named Plaintiff's Additional Remuneration in its regular rate of pay calculations as required by the FLSA and Ohio law, Named Plaintiff Smith's overtime rate of pay would necessarily have been higher due to the $325.25 in total Additional Remuneration for this pay period.

82.     Named Plaintiff and other Putative Class Members earned Base Hourly Wages and Additional Remuneration in workweeks when they worked more than forty (40) hours during the three (3) years preceding the original Complaint, but they were not fully compensated for all overtime premium they earned in accordance with the FLSA and Ohio law as a result of Defendant's Additional Remuneration Policy.

**(Failure to Pay Overtime for All Hours Worked Due to Non-Neutral Rounding Policy)**

83.    During workweeks when Named Plaintiff worked more than 40 hours in one or more workweeks, Defendant failed to pay him overtime compensation for all hours worked.

84.    Defendant required Named Plaintiff and Putative Class Members to clock in/out each day using a companywide timekeeping system to keep track of their work hours.

85.    Defendant also required Named Plaintiff and Putative Class Members to be ready to perform production/maintenance job duties by the scheduled start of their shifts.

86.    However, in order for Named Plaintiff and Putative Class Members to be ready to perform their job duties by the scheduled start of their shifts, they regularly clocked in[3] prior to the scheduled start of their shift and performed integral and indispensable job duties, including putting on personal protective equipment ("PPE") such as a uniform, hard hat(s), safety glasses, and gloves at Defendant's facility in a designated locker room due to the corrosive nature of sulfuric acid they regularly came into contact with, among other safety concerns.

87.    It would be impossible for Named Plaintiff and the Putative Class Members to perform their work duties unless they first donned their PPE. As such, these tasks were integral and indispensable to the work they are hired to do.

88.    Donning their PPE were intrinsic elements of their work activities and ones in which they cannot dispense if they are to perform their principal activities. Unless Named Plaintiff and the Putative Class Members did not first don their PPE, they could not complete any work thereafter.

---

[3] For all intents and purposes, the terms "punch in" and "clock in" are used interchangeably and have the same meaning herein. In addition, the terms "punch out" and "clock out" also are used interchangeably and have the same meaning.

89.     As such, donning PPE constitutes the first principal activities of the day and were components of the work they were hired to do.

90.     However, they were not paid for such time.

91.     After donning their PPE, Named Plaintiff and the Putative Class Members proceeded out onto the floor to relieve the previous shift production/maintenance employees, go over any issues from the previous shift, among other job duties including walk through of the entire building to check fluid levels of the machines and boilers to ensure everything is up and running for production that shift, and safety checks, all of which is intrinsic to performing their production/maintenance job duties throughout the remainder of their shifts.

92.     As such, these tasks were also integral and indispensable to the work they are hired to do.

93.     However, they were not paid for any pre-shift job duties. Instead, Defendant rounded their compensable time towards the scheduled start of their shifts.

94.     Named Plaintiff and Putative Class Members continued performing their primary job duties up through and including until they clocked out at the end of their shifts.

95.     Once relieved from their job duties, Named Plaintiff and Putative Class Members exited the floor, went back to their locker rooms, and took off their PPE to be stored at the facility, then clocked out and left the building.

96.     Doffing their PPE was intrinsic elements of their work activities and ones in which they cannot dispense when performing their principal activities.

97.     Doffing their uniforms constitutes the last principal activities of the shift and were components of the work they are hired to do.

98.    As such, they should have been compensated for such time as those activities were compensable under the FLSA and Ohio law.

99.    However, they were not paid for such time.

100.    Defendant was aware of the pre- and post-shift work because all of this work, whether it be the job duties performed prior to the scheduled start or beyond the scheduled end of their shifts, is captured on Defendant's company-wide timekeeping system.

101.    Defendant's failure to compensate Named Plaintiff and other members of the Putative Class Members for hours worked more than forty (40) hours per week at "one and one-half times" the employees' "regular rate[s]" of pay as a result of Defendant's (1) Unpaid Meal Break Policy; (2) Additional Remuneration Policy; and/or (3) Rounding Policy constitutes a knowing and willful violation of the FLSA, 29 U.S.C. § 207, and corresponding Ohio Acts, O.R.C. §§ 4111.03(A), 4113.15.

102.    Defendant knew that Named Plaintiff and other members of the Putative Class were entitled to overtime compensation under federal and Ohio or acted in reckless disregard for whether they were so entitled.

103.    Defendant uniformly applied the same pay policies and/or practices of compensating other members of the Putative Class Members.

104.    Defendant intentionally, knowingly, and willfully circumvented the requirements of the FLSA and the Ohio Acts as alleged above.

105.    The above payroll practices resulted in knowing and willful overtime violations of the FLSA, 29 U.S.C. §§ 201-219; O.R.C. §§ 4111.03, 4113.15; and resulted in the unlawful deprivation of wages of Defendant to the detriment of Defendant's employees, including Named Plaintiff and other members of the Putative Class.

A. **FLSA Collective Action for Unpaid Overtime Wages**

106.    Named Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated who have been, are being, or will be adversely affected by Defendant's unlawful conduct as described herein.

107.    As outlined above, the FLSA Collective that Named Plaintiff seeks to represent as members of the FLSA Collective and to whom Named Plaintiff seeks the right to send "opt-in" notices for purposes of the collective action, of which Named Plaintiff himself is a member, is composed of and defined as follows:

> All hourly, non-exempt production/maintenance employees who were subject to the Unpaid Meal Break Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Meal Break Collective Members" or "FLSA Meal Break Collective");

> All hourly, non-exempt production/maintenance employees who were subject to the Additional Remuneration Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Additional Remuneration Collective Members" or "FLSA Additional Remuneration Collective"); and

> All hourly, non-exempt production/maintenance employees who were subject to the Rounding Policy at any time during the past three (3) years and continuing through final disposition of this case ("FLSA Rounding Collective Members" or "FLSA Rounding Collective").

108.    As alleged above, FLSA Meal Break Collective Members, FLSA Additional Remuneration Collective Members, and FLSA Rounding Collective Members are collectively referred to as the "FLSA Collective," "FLSA Collective Members," or "FLSA Collectives."

109.    This action is maintainable as an "opt-in" collective action pursuant to the FLSA as to claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs. In addition to Named Plaintiff, numerous current and former hourly production/maintenance

employees are similarly situated with regard to their wages and claims for unpaid wages and damages. Named Plaintiff is representative of those other employees and is acting on behalf of their interests, as well as his own, in bringing this action.

110.    Conditional certification of this case as a collective action pursuant to 29 U.S.C. § 216(b) is proper and necessary so that such persons may be sent a Court-authorized notice informing them of the pendency of this action and giving them the opportunity to "opt in."

111.    These similarly situated employees are known to Defendant and are readily identifiable through Defendant's business and payroll records that they were required to maintain pursuant to the FLSA. These individuals may readily be notified of this action and allowed to opt in pursuant to 29 U.S.C. § 216(b) for the purpose of collectively adjudicating their claims for unpaid overtime compensation, liquidated damages, attorneys' fees, and costs.

112.    Named Plaintiff cannot yet state the exact number of similarly situated persons but avers, upon information and belief, that the FLSA Collectives consists of several hundred or more persons. Such persons are readily identifiable through the payroll records Defendant has maintained, and were required to maintain, pursuant to the FLSA.

**B.      Federal Rule of Civil Procedure 23 Class Action for Unpaid Overtime Wages**

113.    Named Plaintiff brings his Ohio Acts claims under Federal Rule of Civil Procedure 23 as a class action on behalf of himself and all other members of the Ohio Class Members, defined as:

> All hourly, non-exempt production/maintenance employees who were subject to the Unpaid Meal Break Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Meal Break Class Members" or "Ohio Meal Break Class");

> All hourly, non-exempt production/maintenance employees who were subject to the Additional Remuneration Policy at any time

during the past two (2) years and continuing through final disposition of this case ("Ohio Additional Remuneration Class Members" or "Ohio Additional Remuneration Class"); and

All hourly, non-exempt production/maintenance employees who were subject to the Rounding Policy at any time during the past two (2) years and continuing through final disposition of this case ("Ohio Rounding Class Members" or "Ohio Rounding Class").

114.    As alleged above, the Ohio Meal Break Class Members, Ohio Additional Remuneration Class Members, and Ohio Rounding Class Members are collectively referred to as the "Ohio Class," "Ohio Class Members," or "Ohio Classes." The claims brought on behalf of the Ohio Class Members are brought on behalf of all similarly situated persons who do not opt-out of the Ohio Classes during the relevant time period above.

115.    The Ohio Classes, as defined above, are so numerous that joinder of all members is impracticable. Named Plaintiff cannot yet state the exact number of class members but avers, upon information and belief, that they consist of several hundred or more persons. The number of class members, as well as their identities, are ascertainable from the payroll and personnel records Defendant maintained, and were required to maintain, pursuant to the FLSA and the Ohio Acts. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.2, 516.5, 516.6, 516.7; and Art II., Section 34a of the Ohio Constitution.

116.    Named Plaintiff is a member of the Ohio Classes and his claims for unpaid wages are typical of the claims of other members of the Ohio Classes.

117.    Named Plaintiff will fairly and adequately represent the Ohio Classes and the interests of all members of the Ohio Classes.

118.    Named Plaintiff has no interests that are antagonistic to or in conflict with those interests of the Ohio Classes that he has undertaken to represent.

119.     Named Plaintiff has retained competent and experienced class action counsel who can ably represent the interests of the entire Ohio Classes. Named Plaintiff's counsel has broad experience in handling class action litigation, including wage-and-hour litigation, and are fully qualified to prosecute the claims of the Ohio Classes in this case.

120.     Questions of law and fact are common to the Ohio Classes and predominate over any questions affecting only individual members. The questions of law and fact common to the Ohio Classes arising from Defendant's conduct include, without limitation:

(a)     whether Defendant violated the Ohio Acts by failing to pay the Ohio Class Members for all overtime wages earned because of the violation(s) described herein;

(b)     what amount of unpaid and/or withheld compensation, including overtime compensation, is due to Named Plaintiff and other members of the Ohio Classes on account of Defendant's violations of the Ohio Acts;

(c)     whether the unpaid and/or withheld compensation remained unpaid in violation of the Ohio Acts; and

(d)     what amount of prejudgment interest, liquidated damages, and/or other monetary relief afforded by the Ohio Acts is due to Named Plaintiff and other members of the Ohio Classes on the overtime or other entitled compensation which was withheld or not paid to them.

121.     Class certification is appropriate under Rule 23(b)(1) because individual actions would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant with respect to their hourly, non-exempt employees comprising of the Ohio Class.

122.     Class certification is appropriate under Rule 23(b)(2) because Defendant acted or refused to act on grounds generally applicable to the Ohio Classes, making appropriate declaratory and injunctive relief with respect to Named Plaintiff and the Ohio Classes as a whole.

123. Class certification is appropriate under Rule 23(b)(3) because the questions of law and facts common to the Ohio Classes predominate over questions affecting individual members of the Ohio Classes and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

124. A class action is superior to individual actions for the fair and efficient adjudication of Named Plaintiff's claims and will prevent undue financial, administrative, and procedural burdens on the parties and the Court.

125. Named Plaintiff and counsel are not aware of any interfering pending Ohio litigation on behalf of the Ohio Classes as defined herein. Because the damages sustained by individual members may be modest compared to the costs of individual litigation, it would be impractical for class members to pursue individual litigation against Defendant to vindicate their rights. Certification of this case as a class action will enable the issues to be adjudicated for all class members with the efficiencies of class litigation.

## IV. CAUSES OF ACTION

### COUNT I
### (29 U.S.C. § 207 - FLSA COLLECTIVE ACTION
### FOR UNPAID OVERTIME COMPENSATION)

126. Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

127. This claim is brought as part of a collective action by Named Plaintiff on behalf of himself and other members of the FLSA Collectives against Defendant, individuals who may join this case pursuant to 29 U.S.C. § 216(b).

128. The FLSA requires that non-exempt employees receive overtime compensation of "not less than one and one-half times" the employees' "regular rate" of pay. 29 U.S.C. § 207(a)(1).

129.     Named Plaintiff and other members of the FLSA Collectives should have been paid overtime wages in the amount of 150% of their "regular rate" for all hours worked in excess of forty (40) hours per workweek.

130.     Defendant did not pay overtime compensation to Named Plaintiff and other members of the FLSA Collectives at overtime wages for all of their overtime hours worked due to Defendant's (1) Unpaid Meal Break Policy; (2) Additional Remuneration Policy; and/or (3) Rounding Policy as alleged above.

131.     Defendant's failure to keep records of all of the hours worked each workday and the total hours worked each workweek by Named Plaintiff and other similarly situated employees also violates the FLSA. *See* 29 C.F.R § 516.2(a)(7).

132.     As a result of Defendant's practices and/or policies, Named Plaintiff and other members of the FLSA Collectives have not received overtime wages due to them pursuant to the FLSA.

133.     Defendant knowingly, willfully, and/or in reckless disregard carried out an illegal pattern and practice of failing to pay Named Plaintiff and other members of the FLSA Collectives overtime compensation. Defendant's deliberate failure to pay overtime compensation to Named Plaintiff and other members of the FLSA Collectives was neither reasonable, nor was the decision not to pay overtime compensation made in good faith. By engaging in these practices, Defendant willfully violated the FLSA and regulations thereunder that have the force of law.

134.     The exact total amount of compensation, including overtime compensation, that Defendant failed to pay Named Plaintiff and other members of the FLSA Collectives is unknown at this time, as many of the records necessary to make such calculations are in the possession of Defendant and/or were not kept by Defendant.

135.    As a result of Defendant's violations of the FLSA, Named Plaintiff and other members of the FLSA Collectives were injured in that they did not receive wages due to them pursuant to the FLSA. 29 U.S.C. § 216(b) entitles Named Plaintiff and other members of the FLSA Collectives to an award of "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b) further provides that "[t]he court … shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

**COUNT II**
**(O.R.C. § 4111.03 – RULE 23 CLASS ACTION**
**FOR UNPAID OVERTIME COMPENSATION)**

136.    Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

137.    This claim is brought under the Ohio Wage Act, which incorporates the FLSA without limitation.

138.    Named Plaintiff and other Ohio Class Members have been employed by Defendant, and Defendant is an employer covered by the overtime requirements under the Ohio Wage Act.

139.    The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" (1.5x) the employee's regular rate of pay for all hours worked over forty (40) in one workweek "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the Fair Labor Standards Act of 1937." *See* O.R.C. § 4111.03(A); *see also* 29 U.S.C. § 207(a)(1) (stating same).

140.    While employed by Defendant, Named Plaintiff and other Ohio Class Members worked in excess of the maximum weekly hours permitted under Section 4111.03, but were not

fully paid overtime wages as a result of Defendant's (1) Unpaid Meal Break Policy; (2) Additional Remuneration Policy; and/or (3) Rounding Policy as outlined above.

141.    As a result of Defendant's company-wide corporate policies and/or practices as described herein, Defendant failed to pay Named Plaintiff and other Ohio Class Members all overtime wages earned.

142.    Named Plaintiff and other Ohio Class Members were not exempt from the wage protections of the Ohio Wage Act.

143.    Defendant's repeated, knowing failure to pay overtime wages to Named Plaintiff and other Ohio Class Members were violations of the Ohio Wage Act, and, as such, Defendant willfully withheld and failed to pay the overtime compensation to which Named Plaintiff and other Ohio Class Members are entitled.

144.    For Defendant's violations of the Ohio Wage Act, Named Plaintiff and other Ohio Class Members have suffered and continue to suffer damages. Named Plaintiff seeks unpaid overtime and other compensation, interest, attorneys' fees, and all other remedies available on behalf of himself and all other Ohio Class Members.

### COUNT III
### (O.R.C. § 4113.15 – RULE 23 CLASS ACTION
### FOR OPPA VIOLATION)

145.    Named Plaintiff incorporates by reference the foregoing allegations as if fully rewritten herein.

146.    The OPPA encompasses two claims. First, a violation of any other wage statute (including the FLSA or the Ohio Wage Act) triggers a failure to timely pay wages under the OPPA.

147.    Second, the OPPA allows an employee to sue to recover liquidated damages if the wages due are not in dispute.

148.    Named Plaintiff and other Ohio Class Members have been employed by Defendant.

149.    At all times relevant, Defendant was an entity covered by the OPPA, and Named Plaintiff and other Ohio Class Members have been employed by Defendant within the meaning of the OPPA.

150.    The OPPA requires Defendant to pay Named Plaintiff and other Ohio Class Members all wages, including unpaid overtime compensation, on or before the first day of each month for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof *and* on or before the fifteenth day of each month for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

151.    At all times relevant, Named Plaintiff and other Ohio Class Members were not paid all wages, including overtime wages at one-and-one-half times their regular rates of pay within thirty (30) days of performing the work as outlined above. *See* O.R.C. § 4113.15(B).

152.    As a result, Named Plaintiff's and other Ohio Class Members' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

153.    Defendant's violations of the OPPA, O.R.C. § 4113.15, injured Named Plaintiff and other Ohio Class Members of the FLSA Collectives in that they did not receive wages due to them in a timely fashion as required by Ohio Law.

154.    In violating the OPPA, Defendant acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Ohio law.

155.    As a result of Defendant's violation of the OPPA, Plaintiff and other members of the FLSA Collective and Ohio Class Members are entitled to unpaid wages and liquidated damages pursuant to O.R.C. § 4113.15.

## V.    PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiff requests judgment against Defendant and for an Order:

A.    Certifying the proposed FLSA collective action;

B.    Directing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to the FLSA Collectives apprising them of the pendency of this action and permitting them to timely assert their rights under the FLSA;

C.    Certifying the proposed Ohio Class under the Ohio Acts;

D.    Finding that Defendant have failed to keep accurate records and that Named Plaintiff and other members of the FLSA Collectives and Ohio Class Members are entitled to prove their hours worked with reasonable estimates;

E.    Finding that Defendant's wage and hour policies and/or practices as alleged herein violate the FLSA;

F.    Entering judgment against Defendant for damages for all unpaid overtime compensation owed to Named Plaintiff and other members of the FLSA Collectives during the applicable statutory period under the FLSA and continuing through trial;

G.    Entering judgment against Defendant for liquidated damages pursuant to the FLSA in an amount equal to all unpaid overtime compensation owed to Named Plaintiff and other members of the FLSA Collectives during the applicable statutory period under the FLSA and continuing through trial;

H.    Awarding to Named Plaintiff and other members of the FLSA Collectives and Ohio Class Members unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the Ohio Acts, including but not limited to the OPPA, including but not limited to in an amount equal to six per cent of the amount of the unpaid wages still unpaid or two hundred dollars per Ohio Class member, whichever is greater;

I.    Awarding Named Plaintiff and other members of the FLSA Collectives and Ohio Class prejudgment interest, post-judgment interest, and an award of damages representing Defendant's employers' share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

J.    Awarding to Named Plaintiff a service award for her efforts in remedying various pay policies/practices as outlined above;

K.    Awarding to Named Plaintiff and other members of the FLSA Collectives and Ohio Class costs and disbursements and reasonable allowances for fees of counsel and experts and reimbursement of expenses;

L.      Directing Defendant to pay reasonable attorneys' fees and all costs connected with this action;

M.      Granting Named Plaintiff leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery;

N.      Declaring judgment for all civil penalties to which Named Plaintiff and all other similarly situated employees may be entitled; and

O.      Awarding such other and further relief as to this Court may deem necessary, just, or proper.


Respectfully submitted,

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
**BRYANT LEGAL, LLC**
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*/s/ Matthew B. Bryant*
Matthew B. Bryant (0085991)
Esther E. Bryant (0096629)
**BRYANT LEGAL, LLC**
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com
          Ebryant@bryantlegalllc.com

*Attorneys for Named Plaintiff and Other Members*
*of the FLSA Collective and Ohio Class*


## JURY DEMAND

Named Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Daniel I. Bryant*
Daniel I. Bryant